IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) | |
| Plaintiff, | ) ) | 16 C 10299 |
| v. | ) ) | Judge John Z. Lee |
| CHICAGO TEACHERS UNION, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Board of Education of the City of Chicago ("the Board" or "CPS") has filed this suit against Defendant Chicago Teachers Union ("CTU") seeking a declaratory judgment that the Board's imposition, in the future, of reasonable restrictions on the conduct of CTU employees, representatives, and agents as it relates to CPS personnel and Board business would not violate the First Amendment rights of CTU or its members. Compl. at 9, ECF No. 1. The Board also requests a judgment that, in the event that the Board imposes reasonable restrictions on CTU employees, representatives, and agents in order to "provide [the Board's employees] a workplace that is not hostile and does not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and the Illinois Human Rights Act, 775 ILCS 5/1-101," such restrictions would not infringe the First Amendment rights of CTU or its members. *Id.*

In response, CTU has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure ("Rule")

12(b)(1) and 12(b)(6).  For the reasons that follow, CTU's motion to dismiss for lack of jurisdiction [12] is granted.

## **Procedural History**

The present action is the offspring of another lawsuit pending before this Court: *Kugler v. Board of Education of the City of Chicago*, No. 16-cv-8305 (N.D. Ill.) ("the Kugler Action").  Pl.'s Resp. 2, ECF No. 16.  In that case, John Kugler, a CTU representative, has sued the Board alleging, among other things, that the Board violated his First Amendment rights by unreasonably restricting his ability to engage in union activities on CPS property.  *Id.*  In response, not only did the Board file a counterclaim against Kugler, seeking a declaration that its restrictions were constitutionally sound, but it also filed a third-party complaint against the CTU, asking for an order declaring that CPS had the right to impose reasonable restrictions on CTU activities on CPS property.  *Id.*

Although the Court permitted the counterclaim to proceed against Kugler, the Court struck the Board's third-party complaint against the CTU without prejudice.  *Id.*  The Board then filed this action asserting the identical claim.

# Factual Background[1]

The complaint in this case first recounts the specific incidents involving Kugler that led to the Board's decision to implement the restrictions that are the subject of the Kugler Action. Compl. ¶¶ 12–21, ECF No. 1. According to the complaint, at a grievance hearing in April 2015, Kugler used "vulgar and intimidating language," which prompted the Board to notify the CTU of Kugler's conduct. *Id.* ¶ 16. The Board alleges that the CTU's subsequent inaction emboldened Kugler, as well as other CTU representatives. *Id.* By March 2016, Kugler's behavior had apparently "escalated to a threatening and abusive level," and the Board again asked the CTU to address Kugler's conduct by sending a responsible CTU employee to accompany him to grievance hearings. *Id.* ¶ 19. "The CTU, however, did nothing." *Id.*

Believing that the CTU's failure to act has "condoned a pattern of uncontrolled and unmanaged outbursts," the Board claims that it has been damaged because school principals have been reluctant to participate in grievance hearings with Kugler. *Id.* ¶¶ 15, 20, 26. Furthermore, some grievance hearings had to be curtailed or cancelled as a result of Kugler's behavior. *Id.* ¶ 26.

---

[1] The factual background is based on facts alleged in the complaint, which are presumed true for the purposes of the motion to dismiss. *See St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) ("When reviewing a dismissal for lack of subject matter jurisdiction, we note that a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.") (internal quotation marks omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

The Board requests the Court to declare that:

1. The Board does not infringe upon the First Amendment rights of the CTU by imposing reasonable restrictions on the CTU, through its employees, representatives, and agents (a) to restrict threatening, abusive, and bullying conduct of school principals, Board hearing officers and other Board employees; and (b) to allow the Board to conduct itself in a manner that: (i) allows other members of the public to express their views (including views that are sharply critical of the Board and its policies); (ii) allows the Board to conduct Board business in public as required by law; and (iii) permits the Board to create a safe atmosphere suitable for adults and for the students and other children who attend public meetings.

2. The Board does not infringe upon the First Amendment rights of the CTU by imposing reasonable restrictions on the CTU, through its employees, representatives, and agents, to restrict threatening, abusive, and bullying conduct of school principals, Board hearing officers, and other Board employees to provide a workplace that is not hostile and does not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, or the Illinois Human Rights Act, 775 ILCS 5/1-101.

*Id.* ¶ 30.

## Legal Standard

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Because the Act itself does not "supply the court with subject matter jurisdiction," *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995), in order to assert a declaratory judgment action, a plaintiff must establish the justiciability requirements under Article III of the United States Constitution, *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).

Article III limits federal judicial power to cases or controversies. U.S. Const. art. III, § 2; *see Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013). "A case or controversy requires a claim that is ripe . . . ." *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). The primary purpose of the ripeness requirement "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200–01 (1983). Put another way, "federal courts lack the power to give advisory opinions in hypothetical cases." *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 1403 (7th Cir. 1993). Accordingly, "ripeness, when it implicates the possibility of [a court's] issuing an advisory opinion, is a question of subject matter jurisdiction," *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008), and may be raised in a motion under Rule 12(b)(1).

In ruling on a Rule 12(b)(1) motion, the Court must accept as true all well-pleaded facts and may look beyond the jurisdictional allegations to whatever evidence is submitted on the issue of subject-matter jurisdiction. *See St. John's*, 502 F.3d at 625. The party asserting jurisdiction has the burden of proving that jurisdiction exists. *See Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

## Analysis

Under the Declaratory Judgment Act, a potential defendant may obtain early resolution of threatened litigation in certain circumstances "'without waiting until his adversary should see fit to begin suit.'" *NUCOR Corp. v. Aceros y Maquilas de*

*Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (quoting *Cunningham Bros. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969)).  Because declaratory judgment actions are largely anticipatory, the inquiry into ripeness becomes more complicated, "but the ability to bring suit under [the Declaratory Judgment Act] does not vitiate the constitutional requirement that the claim address 'a case of actual controversy.'" *Wis. Cent.*, 539 F.3d at 759 (quoting *Deveraux v. City of Chi.*, 14 F.3d 328, 330–31 (7th Cir. 1994)).  As articulated by the Supreme Court, "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The CTU contends that the Board's declaratory judgment action fails to satisfy Article III's case or controversy requirement.  It argues that the purported controversy between the CTU and the Board is unripe and, therefore, what the Board is really seeking from the Court is an advisory opinion.

"Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all."  *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011).  To this end, in order to determine whether the controversy is sufficiently immediate and real, courts examine:  (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration."  *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.,* 325 F.3d 879, 882 (7th Cir. 2003).

Here, the Board's claim is unripe in both respects. First, the claims that the Board seeks to adjudicate in this case are unfit for judicial decision. This is so because "further factual development would 'significantly advance [the Court's] ability to deal with the legal issues presented'" in this case. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,* 438 U.S. 59, 82 (1978)).

*Wisconsin Realtors Association v. Ponto*, 233 F. Supp. 2d 1078 (W.D. Wis. 2002), is instructive. There, the plaintiffs challenged, among other things, a law mandating the promulgation of regulations requiring public broadcasters to provide access to political candidates. According to the plaintiffs, the law would result in regulations that would violate the broadcasters' First Amendment rights. The court found the claim unripe, noting that "where the regulation at issue has yet to see the light of day it is difficult to see how a First Amendment challenge to the content of the regulation is fit for judicial review." *Id.* at 1095–96. Because "there [was] no way for the court to divine the ultimate content of the regulations," the court found that it could only speculate as to whether the anticipated regulation would violate the First Amendment. *Id.* at 1096.

In much the same way, the Board asks the Court to pre-approve restrictions that it has yet to formulate or adopt. As in *Wisconsin Realtors*, the Court can only speculate as to what restrictions the Board will eventually impose upon CTU and its employees and under what circumstances. The Board retorts that it is only seeking approval to adopt what it terms "reasonable restrictions," Compl. ¶ 30. But whether a particular restriction is reasonable "must be assessed in the light of the

purpose of the forum and all the surrounding circumstances." *See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985).

There are a myriad of unknown variables that would be relevant to such an inquiry. For example, what is the precise forum at issue? *See Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 588 F.3d 523, 530 (7th Cir. 2009) ("Under a Free Speech forum analysis, the forum category defines the level of scrutiny applicable to the challenged government action."). What is the conduct by the CTU employee or representative that led to the restrictions? What are the nature and scope of the restrictions? Do the restrictions completely prohibit a CTU representative from any and all expressive participation in the forum, or are the restrictions tailored to the conduct in question (whatever the conduct may be)? *See, e.g., Kugler v. Bd. of Educ. of the City of Chi.*, No. 16-cv-8305, 2017 WL 3581176, at *9 (N.D. Ill. Aug. 18, 2017) (noting that the Board's restriction prohibiting Kugler from participating in grievance hearings for an indefinite length of time was unreasonable). These are but a few of the unanswered questions that make this case unfit for adjudication.

Now, the Board might argue that the Court need not engage in such a hypothetical analysis because the declaratory judgment it requests assumes that the restrictions are "reasonable." But, depending on the forum and type of restriction, a restriction on free speech must not only be reasonable, but it also must be content-neutral, narrowly tailored to serve a significant governmental interest, and permissive of ample alternative channels of communication. *See, e.g., Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009) (noting that, in a designated public forum, where "government property that has not traditionally been regarded

8

as a public forum is intentionally opened up for that purpose," restrictions on speech are "subject to the same strict scrutiny"). Furthermore, to the extent that the Board wishes to limit its claims to limited public fora or nonpublic fora, where the government has a greater latitude to impose restrictions, a judgment that declares that a "reasonable restriction" does not violate the First Amendment is simply a recitation of controlling law. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (holding that, in a limited forum, government restrictions on speech must be reasonable).

Further, it is unclear what, if any, hardship the Board will face if the Court declines to consider this declaratory judgment action. *See Metro. Milwaukee Ass'n*, 325 F.3d at 882. The Board correctly states that the Declaratory Judgment Act's purpose is to afford relief from uncertainty and clarify the legal relations of the parties. Pl.'s Resp. at 5 (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)). But plaintiffs in declaratory judgment actions must demonstrate some harm "other than the normal uncertainty" a potential litigant might experience. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002). A plaintiff must show that the threat of future harm has a "present concrete effect on [plaintiff's] day-to-day affairs and 'irremediably adverse consequences' would flow from a later challenge." *Metro. Milwaukee Ass'n*, 325 F.3d at 882 (quoting *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57–58 (1993)).

Here, the Board alleges that the CTU's failure to address Kugler's behavior has "damaged the Board because school principals are unable to fulfill their roles at grievance hearings and Board hearing officers have been forced to curtail and cancel

hearings" due to Kugler's conduct. Compl. ¶ 26. But the Board already has asserted a counterclaim seeking a declaratory judgment that the Board's restrictions on Kugler were permissible in the Kugler Action. *Kugler v. Bd. of Educ. of Chi.*, No. 16 C 8305, 2017 WL 3169046, at *3 (N.D. Ill. July 26, 2017). All issues related to that counterclaim will thus be resolved in the Kugler Action.

The Board also asserts, on information and belief, that the CTU's inaction as to Kugler has emboldened other CTU representatives, Compl. ¶ 16, and that the controversy between it and CTU extends beyond the Kugler Action, Pl.'s Resp. at 3, 5. The Board believes it necessary to implement reasonable restrictions on CTU representatives to create a safe atmosphere for Board employees, school principals, students, and members of the public who attend Board meetings, Compl. ¶¶ 27–28. But such allegations are conclusory and without any factual support. Furthermore, if the Board believes that particular circumstances warrant the imposition of specific restrictions on the conduct of CTU employees, representatives and agents, it can always do so. CTU then can either abide by the restrictions or challenge them in court; alternatively, if there is an actual case or controversy between CTU and the Board regarding the restrictions, the Board can seek a declaratory judgment with respect to the constitutionality of the particular restrictions. Thus, the Court concludes that the Board will suffer minimal, if any, hardship, if the Court declines to entertain this action.

In short, without knowing what the particular future restrictions will be or what conduct the restrictions are attempting to address (or even if CTU would challenge them), this case is not ripe for adjudication. For the same reasons, the

relief that Board seeks in this case amounts to nothing more than an advisory opinion. And, of course, courts are prohibited from issuing advisory opinions due to the "desire to conserve judicial time and effort by avoiding unnecessary adjudication" and the concern that they "might be ill-informed and unreliable because the factual record on which [they are] based [i]s incomplete or hypothetical." *Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941–42 (7th Cir. 1983).

Accordingly, the Court grants the CTU's motion to dismiss this case for lack of subject matter jurisdiction. Having dismissed the case under Rule 12(b)(1), the Court will not address the merits of the complaint under Rule 12(b)(6).

### Conclusion

For the reasons stated herein, the CTU's motion to dismiss for lack of jurisdiction [12] is granted. This case is dismissed without prejudice.

**IT IS SO ORDERED.**               **ENTERED**   9/25/17

_____
**John Z. Lee**
**United States District Judge**